UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **DAWNE RENEAU BENSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 1:23-CV-00018 |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

The Acting Commissioner of Social Security denied plaintiff Dawne Reneau Benson's application for supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff now seeks judicial review. [Doc. 1.] As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.  Facts**

Plaintiff Benson was born in 1971. She testified that she had previous work experience as a home health aide and flower arranger and had completed the 10th grade. She alleges her disability began in January 2019, and she has not been employed since that time.

Plaintiff alleges multiple impairments. She claims, *inter alia*, an inability to sit or stand for long periods of time, difficulty walking half a block, difficulty leaving her home due to anxiety, medication-induced dizziness and confusion, and trouble sleeping. [Tr.

1

291–92; *see also* Tr. 51–53.] She claims her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and concentrate. [Tr. 296.] Specifically, she claims she can only walk for about twenty minutes before her legs go numb, and can only sit for fifteen to twenty minutes before her back hurts and legs and feet go numb. [Tr. 51.] During plaintiff's hearing before the administrative law judge (ALJ), plaintiff cited her weight, back problems, and anxiety as the most severe impairments keeping her from working. [Tr. 50–51.] She also stated that her hands go numb when she holds things, and that she "can't hardly use a can opener" and sometimes is unable to fasten her pants. [Tr. 53.] Plaintiff's attorney alleged further impairments of low back pain, myofascial muscle pain, sciatica pain, mild to moderate facet joint arthropathy within the lower spine, obesity, diabetes, GERD, hypertension, restless leg syndrome, anxiety, depression, and PTSD. [Tr. 45–46.] Plaintiff's medical records further indicate the presence of varicose veins [Tr. 46, 401] and left thumb basal joint osteoarthritis, [Tr. 46, 573] as well as treatment in the form of receipt of a series of injections occurring from 2018 to 2020, though plaintiff reported that injections worked only "a little," and that they "work for about a couple of weeks and then they don't work." [Tr. 45–46, 52–53, 387, 444, 450, 457, 464, 482, 537, 610, 649.]

      Plaintiff lives at a home with her minor child. She states that she cares for her child, though her friend will occasionally assist her to make sure her child gets to school and has something to eat. [Tr. 292.] She manages her finances and performs some household chores. [Tr. 293–94.] She reports difficulties in personal care, including difficulty putting on clothes, shaving, and brushing hair. [Tr. 292.] She reports that she

has trouble getting along with her family on occasion and that she does "not often" go outside, as staying inside her house makes her feel safer; she will venture to the grocery store once or twice per month. [Tr. 294–95.]  She complains of occasionally being distracted and confused, which can affect her ability to follow instructions. [Tr. 296.]

Plaintiff applied for disability insurance benefits and supplemental security income on November 8, 2019.  She was denied initially on April 15, 2020, and upon reconsideration on March 12, 2021.  She filed a request for a hearing, which was held on December 13, 2021.  The ALJ issued an unfavorable decision on February 8, 2022.

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

3

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records,

4

observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id*. At Step Five, even though the *burden of production* shifts to the

5

Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.   The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and she had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: obesity, osteoarthritis of the sacroiliac joints, degenerative disc disease and degenerative joint disease of the lumbar spine, myofascial pain syndrome, osteoarthritis of the left thumb, varicose veins of the bilateral lower extremities, anxiety, depression, and post-traumatic stress disorder (PTSD). [Tr. 15.] At Step Three, the ALJ determined plaintiff's severe impairments did not meet or equal a listed impairment.

Next, in Step Four, the ALJ determined plaintiff's RFC. The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) and 416.967(b) except she can never climb ladders, ropes and scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can perform work requiring no concentrated exposure to vibration or hazards such as unprotected heights. She can maintain the attention required to perform simple tasks in a routine work setting and make simple, work-related decisions. The claimant can adapt to few, if any, workplace changes that are predictable and introduced gradually. She can perform work that is not at a fast pace such as on an assembly line but can stay on task and meet reasonable production requirements in an environment that allows a flexible and goal-oriented pace. She can have no direct interaction with the public and can work in proximity to but not coordination with coworkers.

[Tr. 18.] The ALJ considered plaintiff's impairments noted on her adult function report and the evidence presented in her medical records and ultimately concluded that

6

>the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because imaging and treatment of her spinal impairments was mild and conservative in nature.  Additionally, her mental health treatment was minimal and did not document significant abnormalities in her examinations.

[Tr. 20.]

The ALJ also relied on the testimony of the vocational expert, who stated in plaintiff's hearing that plaintiff would be unable to perform any of her past relevant work. [Tr. 28, 62.]  Based on this RFC determination, the ALJ concluded that plaintiff could not perform her past work as a home health aide (classified as medium exertion as generally performed, light exertion as actually performed) or as a flower arranger (classified as light exertion as generally performed, medium exertion as actually performed). [Tr. 28.]

In Step Five, the ALJ evaluated whether plaintiff maintained the RFC to perform work that exists in significant numbers in the national economy.  Once again relying on the testimony of the vocational expert, the ALJ concluded that plaintiff had the RFC to work in the occupations of small product assembly (with 700,000 jobs in the national economy), laundry folder (with 105,000 jobs in the national economy), or bottle packer (with 500,000 jobs in the national economy). [Tr. 29; *see also* Tr. 62.]  Consequently, the ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to

7

other work that exists in significant numbers in the national economy." [Tr. 29.]  Thus, the ALJ found that plaintiff was not disabled and denied her claim.

## IV.   Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)).  The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.*  "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992).  In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V.   Discussion

Plaintiff contends that this case should be remanded because the ALJ's RFC determination was unsupported by substantial evidence.  Plaintiff argues, in particular,

8

that in determining that plaintiff had no resulting limitations from her left thumb osteoarthritis (which the ALJ initially found to be a severe impairment), the ALJ improperly relied on medical evidence from before the onset of the osteoarthritis. *Brief for Plaintiff* at 6–7. That is plaintiff's sole complaint on appeal.

In that regard, the ALJ discussed Dr. Scheffer's November 19, 2019 medical opinion as follows:

> On November 19, 2019, the claimant's primary care provider, Erica Schaefer [sic], M.D.,…opined no limitations for repetitive reaching, handling, or fingering and that the claimant could use her hands and fingers 100% of the day and use her arms for reaching 50% of the day…
>
> I find the portion relating to the claimant's lack of manipulative limitations is persuasive. That assessment is consistent with the limited treatment and complaints of the claimant regarding her left thumb and consistent with the findings of full range of motion and sensation during other examinations. That assessment is consistent with and supported by the evidence, despite the claimant's testimony to the contrary.

[Tr. 26 (internal citations omitted).]

It was not, however, until nearly two years *after* Dr. Scheffer's above opinion that plaintiff was diagnosed with left thumb osteoarthritis. [*See* Tr. 573, 575.] Hence, plaintiff submits Dr. Scheffer's opinion was outdated and irrelevant. *See Brief for Plaintiff* at 6. In support of this argument, plaintiff cites to *Moreno v. Berryhill*, in which the Seventh Circuit held "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." 882 F.3d 722, 728 (7th Cir. 2018).

This Court has no disagreement with that proposition, but concludes that plaintiff's later diagnosis of left thumb osteoarthritis would not reasonably have changed

9

Dr. Scheffer's earlier opinion.  Although Dr. Scheffer's medical conclusions were based upon plaintiff's full range of motion in her hands and fingers, plaintiff argues that

> the ALJ's reliance on examinations showing 'full range of motion and sensation' do not speak to the problems Ms. Benson is having with her left thumb.  She did not complain of limited range of motion or a lack of sensation, rather she complained of pain and reduced grip in the left hand as a result of her osteoarthritis.

*Brief for Plaintiff* at 8 (citing [Tr. 26]) (citations omitted).

But reference to the ALJ's analysis shows that she did indeed conclude that plaintiff had little to no resulting limitations from the osteoarthritis.  The ALJ concluded:

> Although the claimant testified that she had problems with numbness in her hands and feet…there were limited visits addressing these alleged impairments.  In March 2021…X-rays revealed severe left thumb osteoarthritis.  *She had a Kenalog injection.  This treatment seems to encompass the full extent of her complaints of hand pain.*  The record does not seem to demonstrate…clinical findings showing neurologic deficits in any extremity.  Instead, examinations demonstrate that the claimant was neurologically intact…throughout the relevant period.

[Tr. 22 (internal citations omitted) (emphasis added).]  Consistent with the ALJ's analysis, plaintiff's medical records provide no complaints of left thumb pain following the March 2021 Kenalog injection.

The ALJ's position can thus be summarized as follows: though plaintiff's left thumb osteoarthritis is a severe impairment *when left untreated*, the medical record indicates that plaintiff received treatment that left her with little to no lingering effects from it.  In other words, plaintiff's treatment for left thumb osteoarthritis (or, perhaps more aptly, the lack thereof) indicates this condition has been managed to the extent that it does not result in limitations to plaintiff's ability to work.  Consequently, this Court

10

determines that the osteoarthritis diagnosis would not have changed Dr. Scheffer's opinion because it has been treated to the point of being essentially asymptomatic.

In a sub-point, plaintiff argues that the ALJ erred at Step 5 of the disability determination "[b]ecause the ALJ failed to properly account for any limitation in her hypothetical questions to the [vocational expert] arising from Ms. Benson's severe left thumb osteoarthritis." *Brief for Plaintiff* at 8.  As above, plaintiff's argument rests on the faulty assumption that the ALJ must have concluded that plaintiff's left thumb osteoarthritis resulted in limitations in her ability to work.  But as discussed, any problems stemming from the left thumb osteoarthritis were resolved with treatment, rendering this argument moot.

Finally, plaintiff argues that the ALJ erred in rejecting plaintiff's personal testimony regarding her limitations from osteoarthritis.  This was "because the ALJ largely rejected this testimony by relying on evidence pre-dating the onset of [the left thumb osteoarthritis]." *Brief for Plaintiff* at 8.  This argument fails for the same reasons previously stated.  The record shows plaintiff's osteoarthritis was resolved with treatment.  Additionally, the Social Security Administration has stated that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability" and "[i]n determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 81 Fed. Reg. 14166,

11

14167 (Mar. 9, 2016). The ALJ cannot thus be *ipso facto* in error due to mere consideration of the record in its entirety.

### VI.   Conclusion

The standard of review is whether substantial evidence supports the ALJ's findings, not whether substantial evidence supports contrary findings. *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) ("If substantial evidence supports the decision, we will not reverse, even if substantial evidence could have been marshaled in support of a different outcome.") (citation omitted). The ALJ relied on evidence that a "reasonable mind" would accept as adequate to support the conclusion that plaintiff could perform work with significant numbers in the national economy. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Though the ALJ found plaintiff's left thumb osteoarthritis to be a severe impairment, the ALJ also concluded from plaintiff's medical records that this condition was resolved with treatment. That conclusion alone disposes with this case. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [Doc. 1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 12th day of October, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE